UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                         Criminal No. 15-36  JNE/JJK

          Plaintiff,

v.                                                               **REPORT AND RECOMMENDATION**

Jerome T. Scott,

          Defendant.


      Kevin S. Ueland, Esq., Assistant United States Attorney, for the Plaintiff, United States of America;

      Thomas M. Kelly, Esq., for Defendant Jerome T. Scott.


This action came on for hearing before the Court, Magistrate Judge Jeffrey J. Keyes, on March 27, 2015, at the U.S. Courthouse, 316 North Robert Street, St. Paul, MN  55101.  The Court issued an Order on Motions dated March 27, 2015, reserving Defendant's motion to suppress evidence for submission to the District Court on Report and Recommendation.

Based upon the file and documents contained therein, along with the motions of counsel, the testimony of witnesses, and exhibits received at the hearing, the Magistrate Judge makes the following:

**FINDINGS**

Shortly after 1:30 p.m. on the afternoon of December 30, 2014, Eden Prairie Police Officer Matthew Mohn was in his squad car returning from court in downtown Minneapolis.  He was alone and westbound on Highway 62 near

France Avenue when he received a dispatch report of a bank robbery at the BMO Bank on Ensign Avenue in Bloomington, Minnesota. The dispatch specifically asked that officers in Eden Prairie observe highways for the suspect who was possibly leaving the area. The initial dispatch gave a description of the robber as a black male wearing a blue hoodie and carrying a red bag. Officer Mohn was in the vicinity of the robbery and he promptly activated his lights and siren and proceeded to the area of Londonderry Road and Highway 169. When he arrived at his destination he turned off the lights and siren and positioned his squad car halfway down the northbound entrance ramp from Londonderry Road onto Highway 169. Officer Mohn chose this location based on his knowledge that the BMO Bank was located near the intersection of Highway 169 and Anderson Lakes Parkway, and the only highway routes from the bank were either north or south on Highway 169.

From this freeway ramp position Officer Mohn soon observed a northbound light colored GMC Denali with lightly tinted windows (Def. Hrg. Ex. 1, 2, and 3) being driven by a black male who appeared to be in his mid-30s and wearing a blue hoodie. He saw the vehicle as it came from under the Londonderry/Bren Road overpass, a distance of 100 to 150 feet. The man was alone in the vehicle. The officer began to follow the Denali while calling dispatch to obtain any available updated description of the robber. Dispatch advised Officer Mohn that the robber was thought to be about in his mid-30s and wearing

2

a Carhartt brand hoodie.  (Gov't Hrg. Ex. 5.)   Meanwhile, Officer Mohn had been contacted by Eden Prairie Officer Irmiter, advising that he was on the way to assist with a possible vehicle stop.  Officer Mohn continued to follow the Denali while waiting for Officer Irmiter to catch up to him, and after receiving an updated suspect description, Mohn pulled alongside the Denali to get a better look at the driver.  From this closer view Officer Mohn confirmed his initial observation of a lone black male in his mid-30s, wearing a blue hoodie.

Officer Mohn again had contact with Officer Irmiter, and Officer Irmiter informed Officer Mohn that he was having difficultly catching up because of traffic.  Therefore, on arriving at a place on the freeway that he thought was safe for a traffic stop, Officer Mohn initiated a stop, though he had not observed any traffic violations or furtive movements inside the car.  When he activated the squad car emergency lights, the Denali driver, defendant in this case, promptly pulled over.  The stop occurred approximately six-to-eight miles from where the Denali was initially observed near Londonderry Road.  Officer Mohn parked two or three car lengths back.  He stood at his door and waved for the Defendant to walk back to the squad car.  The Defendant kept his hands visible as he walked to the squad car.  Officer Mohn instructed him to keep his hands out of his pockets and advised the Defendant that he was stopped because there had been a bank robbery in Bloomington; he matched the description of the robber; and the officer wanted to rule him out as a suspect.  Officer Mohn asked permission to

conduct a pat-down search for weapons and the Defendant consented to such search. No weapons were found on his person. Officer Mohn then asked Defendant where he was coming from, to which Defendant said he was coming from Uptown. The officer did not believe that Defendant's course of travel was consistent with his coming from Uptown. When the officer told Defendant that the route did not make sense, Defendant replied that he had stopped "at Mystic." Officer Mohn then identified Defendant by his Minnesota driver's license photo.

After Officer Irmiter arrived at the scene, Officer Mohn had Defendant stand at the front of his squad car while Officer Mohn went to the Denali and looked in the rear window. Officer Mohn did not open any door of the Denali, but was able to see a blue Carhartt jacket in the back area of the vehicle. Officer Mohn went to meet with Officer Irmiter and told him that he saw the Carhartt jacket. Officer Irmiter stated that he had obtained additional information from the robbery, including information that the robber was wearing black painter's pants and had a firearm. (Gov't Hrg. Ex. 5.) Defendant was wearing lightweight black pants with paint on them. At that point the officers decided to secure Defendant in the back seat of Officer Mohn's squad car while they obtained additional information.

Officer Irmiter contacted the Bloomington Police Department to compare notes and to send a cell phone photograph of the suspect. (Gov't Hrg. Ex. 1.) Upon receipt of the photo the Bloomington police asked that the suspect be held

until Bloomington detectives could get there.  About five minutes later a Bloomington officer called back and asked Officer Irmiter to send cell phone photos of Defendant's boots as well, including a picture of the soles of the shoes, and the photos were taken and sent. (Gov't Hrg. Ex. 2 and 3.)  Detectives Nolden and Robinson arrived approximately fifteen minutes after the call and were briefed on the situation by the Eden Prairie officers.  The detectives made a comparison of the Defendant's boot and boot sole photos with surveillance photos from the bank and determined that they had a shoe and footprint match.  After speaking with Defendant, the Bloomington detectives arrested him.  He was then handcuffed, searched, and transferred to Officer Irmiter's squad car for transport to the BMO Bank where he was placed in the custody of other officers.

The Denali was impounded and towed to the Bloomington police station.  The vehicle was not searched at the stop scene, though evidence was observed in plain view inside the vehicle.  The car was later searched pursuant to a warrant, and evidence, including a replica handgun, a red bag, a jacket, and other clothing items, was seized.

**CONCLUSIONS**

**Vehicle Stop.**  The stop of the vehicle driven by Defendant Jerome T. Scott on December 30, 2014, was based upon a reasonable suspicion that the driver was involved in criminal activity and was not made in violation of the Defendant's constitutional rights.  A traffic stop is a seizure within the meaning of

the Fourth Amendment and therefore must be supported by reasonable suspicion or probable cause. *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008) (citing *States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001) and *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).  A law enforcement officer has reasonable suspicion when the officer is aware of "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that crime is being committed." *Id.* (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983).  In considering if the requisite degree of suspicion is present, the court considers whether the facts collectively establish reasonable suspicion and not whether each particular fact establishes reasonable suspicion. *United States v. Campbell*, 843 F.2d 1089, 1093 (8th Cir. 1988).  Also, the court may consider any added meaning that certain conduct may convey to officers who are experienced and trained in observation and crime detection. *Id.*; see also *United States v. Noonan*, 745 F.3d 934, 935-36 (8th Cir. 2014) (the totality of circumstances provides the basis for an officer's reasonable suspicion to make an investigative stop.)

  At the time Officer Mohn stopped Defendant, Mohn knew that a black male, in his mid-30s and wearing a blue hoodie, had robbed the BMO Bank within the past few minutes.  When Officer Mohn first saw the GMC Denali, he determined that the driver was a black male wearing a blue hoodie.  Officer Mohn observed these facts at a time and location that were entirely consistent with a

person leaving the scene of the BMO Bank robbery.  In addition, Officer Mohn confirmed the physical description and the driver's approximate age from a close distance prior to the stop.  Considering the totality of the evidence and circumstances known to Officer Mohn when he made the vehicle stop, he had reasonable suspicion to make a stop for the purpose of investigating whether the Denali driver was involved in the BMO Bank robbery.  Suppression of evidence based on an unlawful vehicle stop is not required.

**Arrest.**  Defendant's arrest was based upon evidence sufficient to establish probable cause for his arrest and the seizure of his person, and therefore was not made in violation of the Defendant's constitutional rights. Probable cause exists when the totality of circumstances warrants a belief that a crime was committed and the person being seized committed the crime.  *United Houston*, 548 F.3d at 1153.  Here, Officer Mohn had received a report that the BMO Bank in Bloomington had been robbed and he was aware of evidence and circumstances sufficient to establish reasonable suspicion for the vehicle stop. The evidence and circumstances clearly crossed the threshold of probable cause when Officer Mohn obtained additional descriptive information and observed Defendant wearing black pants with paint stains and a jacket with a Carhartt label in the back of the Denali; and the Defendant's jacket, boots and shoe soles were found to match surveillance video still shots from the robbery.  Suppression of evidence based upon unlawful arrest is not required.

Based upon the foregoing Findings and Conclusions of Law, the Magistrate Judge makes the following:

**RECOMMENDATION**

It is **Hereby Recommended** that Defendant Jerome T. Scott's Motion to Suppress Evidence be **denied**.  (Doc. No. 17.)


Dated:   April 2, 2015


   s/*Jeffrey J. Keyes*
Jeffrey J. Keyes
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 8, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  Any response to the objecting party's brief shall be served and filed by **April 10, 2015**.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.